THE HONORABLE THOMAS S. ZILLY

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| JAN A. ALGER and JOSEPH A. ANDREACCHIO, husband and wife and the marital community comprised thereof,<br><br>Plaintiffs,<br><br>vs.<br><br>AMERICAN SECURITY INSURANCE COMPANY, a Delaware Corporation; and HOMECOMINGS FINANCIAL, LLC, a South Carolina Corporation, d/b/a Homecomings Financial,<br><br>Defendants. | NO. C07-01438-TSZ<br><br>ORDER |

This matter comes before the Court on Defendant American Security Insurance Company's ("ASIC") Motion for Summary Judgment, docket no. 22. Having reviewed all papers filed in support of and in opposition to the Motion, the Court does hereby GRANT Defendant ASIC's Motion for Summary Judgment, docket no. 22.

ORDER - 1

## BACKGROUND

This case involves an insurance claim presented by Plaintiffs Jan A. Alger and Joseph A. Andreacchio to Defendant ASIC, under a residential insurance policy (the "Policy"). The Policy was procured by Defendant Homecomings Financial, LLC ("HCF") from ASIC, on behalf of HCF and Plaintiffs. Ward Decl., docket no. 23, at 3, ¶ 7. Defendant ASIC denied Plaintiffs' insurance claim, and Plaintiffs commenced this Action.

With respect to Defendant ASIC, Plaintiffs allege that ASIC's denial of the insurance claim was made: (1) in bad faith; (2) in violation of Washington's Consumer Protection Act (CPA), RCW 19.86.010-920 (2008); and (3) in violation of Washington's Insurance Fair Conduct Act (IFCA), RCW 48.30.015 (2008). Compl., docket no. 1, at 6, ¶¶ 19-21.

With respect to Defendant HCF, Plaintiffs allege that, in procuring the Policy, HCF: (1) did so as Plaintiffs' agent; (2) assumed a fiduciary duty to Plaintiffs; and (3) violated its alleged fiduciary duty to Plaintiffs. Compl., docket no. 1, at 9.

Plaintiffs' insurance claim stems from their purchase of a house (the "House") on July 28, 2005 in Oak Harbor, Washington, which they financed through HCF. Alger Decl., docket no. 28, at 4, ¶ 11. Under the mortgage obtained through HCF, Plaintiffs were required to maintain hazard insurance for the House. Id. However, Plaintiffs failed to maintain the required insurance. Id. at 5, ¶ 14. After multiple warnings from HCF and requests that Plaintiffs obtain insurance, on October 26, 2006,

HCF purchased the Policy through ASIC in order to protect HCF's interest in the House. Ward Decl., docket no. 23, Ex. D. As to the scope of the Policy, in the section titled "Coverages," in a subsection titled "Property Covered," the Policy stated in relevant part that it covered "the dwelling . . . used principally for dwelling purposes." Ward Decl., docket no. 23, Ex. C.

Following purchase of the House in Oak Harbor, Plaintiffs continued to reside at a different house in Clinton, Washington, and began operating a daycare in the House on or about February 6, 2006, which Plaintiffs claim was their intent from the beginning. Compl., docket no. 1, at 2-4. On January 15, 2007, Plaintiffs claim that they discovered that the House had sustained flood damage as the result of a burst pipe. Compl., docket no. 1, at 4, ¶ 14. Consequently, Plaintiffs filed an insurance claim with ASIC under the Policy. Id. at 5, ¶ 17. However, ASIC denied Plaintiffs' claim based on ASIC's position that the House was not used principally for dwelling purposes within the Coverages section of the Policy. ASIC's Motion for Summary Judgment, docket no. 22, at 10. This Action ensued, and Defendant ASIC now moves for summary judgment as to all claims against it.

## DISCUSSION

### I. Summary Judgment Standard

A court should grant summary judgment if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party bears the initial burden of demonstrating the absence of a

genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). A fact is material if it might affect the outcome of the suit under the governing law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). In support of its motion for summary judgment, the moving party need not negate the opponent's claim, Celotex, 477 U.S. at 323; rather, the moving party will be entitled to judgment if the evidence is not sufficient for a jury to return a verdict in favor of the opponent. Anderson, 477 U.S. at 249.

When a properly supported motion for summary judgment has been presented, the adverse party "may not rely merely on allegations or denials" of its pleadings. Fed. R. Civ. P. 56(e). The non-moving party must set forth "specific facts" demonstrating the existence of a genuine issue for trial. Id.; Anderson, 477 U.S. at 256. A party cannot create a genuine issue of fact by simply contradicting his or her own previous sworn statement, Cleveland v. Policy Mgmt. Sys. Corp., 526 U.S. 795, 806 (1999), or by asserting "some metaphysical doubt" as to the material facts, Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). Likewise, discrediting the testimony proffered by the moving party will not usually constitute a sufficient response to a motion for summary judgment. Anderson, 477 U.S. at 256-57.

To survive a motion for summary judgment, the adverse party must present affirmative evidence, which "is to be believed" and from which all "justifiable inferences" are to be favorably drawn. Id. at 255. When the record, however, taken as

a whole, could not lead a rational trier of fact to find for the non-moving party, summary judgment is warranted. See Miller v. Glenn Miller Prod., Inc., 454 F.3d 975, 988 (9th Cir. 2006); see also Beard v. Banks, 528 U.S. 521, 529 (2006) ("Rule 56(c) 'mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" (quoting Celotex, 477 U.S. at 322)).

## II. Bad faith and CPA Claims

As a threshold matter, Plaintiffs' bad faith and CPA claims against ASIC turn on interpretation of language in the Policy relating to whether Plaintiffs' use of the House to operate a daycare falls within the Policy's definition of "dwelling . . . used principally for dwelling purposes."[1] ASIC contends that this language is clear and unambiguous and does not cover use of the House as a daycare. ASIC's Motion for Summary Judgment, docket no. 22, at 11, ¶ C. As discussed below, because a denial of coverage based upon a reasonable interpretation of a policy is neither bad faith nor a CPA violation, both claims depend upon whether the Policy language covers the loss, language which the Court interprets as a matter of law not to cover Plaintiffs' claim.

---

1. Plaintiffs do not seriously contend in their Opposition Brief that the Policy covers their claimed loss. Rather, Plaintiffs contend that they conveyed to HCF that the House was being used as a "business" where Plaintiffs operated "The Children's Academy." Plaintiff's Memorandum of Points & Authorities in Opposition to ASIC's Motion for Summary Judgment, docket no. 27, at 10.

ORDER - 5

A. Bad Faith and CPA Standards

The standards governing Plaintiffs' bad faith and CPA claims overlap to a large extent. To establish bad faith, an insured is required to show that the breach was unreasonable, frivolous, or unfounded. Kirk v. Mounty Airy Ins. Co., 134 Wn.2d 558, 560 (1998). A denial of coverage based upon a reasonable interpretation of a policy is not bad faith, and an insurer is entitled to summary judgment if reasonable minds could not differ that its denial of coverage was based upon reasonable grounds. Am. States Ins. Co. v. Symes of Silverdale, Inc., 150 Wn.2d 462, 469-70 (2003). Similarly, when a CPA claim is based upon an insurer's denial of coverage, an insured must establish that the insurer acted without reasonable justification in the denial. Indus. Indem. Co. of the Nw., Inc. v. Kallevig, 114 Wn.2d 907, 917 (1990). If the question of the reasonableness of an insurer's actions is based on interpretation of the language of an insurance policy, the question is one of law. Gingrich v. Unigard Sec. Ins. Co., 57 Wn. App. 424, 433-34 (1990) (affirming grant of summary judgment to insurer where trial court properly interpreted the disputed policy language as a matter of law). A denial of coverage based upon a reasonable interpretation of an insurance contract is not a CPA violation. Transcon. Ins. Co. v. Wash. Pub. Utils. Dists.' Util. Sys., 111 Wn.2d 452, 470 (1988) (affirming trial court's finding that insurer had not acted in bad faith or violated the CPA, where the denial of coverage was based on a reasonable interpretation of the policy).

B.  Interpretation of the Policy

Determining whether an insurance policy is ambiguous is a question of law. Farmers Ins. Co. of Wash. v. Grelis, 43 Wn. App. 475, 477 (1986) (affirming trial court's grant of summary judgment to insurer where words in policy were found not to be ambiguous).  A provision of an insurance policy is ambiguous if it is susceptible to at least two different reasonable interpretations.  Weyerhaeuser Co. Aetna Cas. & Sur. Co., 123 Wn.2d 891, 897 (1994).  Ultimately, if the court is unable to resolve an ambiguity in an insurance policy, it construes the ambiguity in favor of the insured. Queen City Farms, Inc. v. Central Nat'l Ins. Co., 126 Wn.2d 50, 68 (1994).

Undefined terms in an insurance policy are to be given their plain, ordinary, and popular meaning.  Queen City Farms, 126 Wn.2d at 65.  To determine the plain meaning of an undefined term, courts commonly refer to Webster's Third New International Dictionary.  See, e.g., Queen City Farms, 126 Wn.2d at 77; Boeing Co. v. Aetna Cas. & Sur. Co., 113 Wn.2d 869, 877 (1990).  In addition, Washington Courts have consulted the common law or referred to specialty insurance dictionaries such as Barron's Dictionary of Insurance Terms and legal dictionaries such as Black's Law Dictionary to define terms in insurance policies.  See Boeing, 113 Wn.2d at 877-78 (using Barron's Dictionary of Insurance Terms to define the term "damages" in an insurance policy); see also Stuart v. Am. States Ins. Co, 134 Wn.2d 814, 821 (using Black's Law Dictionary to define the term "business pursuit" within the meaning of the exclusion section of a homeowners insurance policy).

Reference to dictionaries used by the courts to define terms in insurance policies supports ASIC's interpretation of the Coverages section of the Policy. First, Webster's Third New International Dictionary defines "dwelling" as a "building or construction *used for residence*." Webster's Third New International Dictionary 706 (Philip Babcock Gove ed., G. & C. Merriam Company 1981) (1961) (emphasis added). In addition, Black's Law Dictionary defines "dwelling house" in relevant part as "[t]he house or other structure *in which a person lives*." Black's Law Dictionary 213 (5th ed. 1996) (emphasis added). Moreover, Barron's Dictionary of Insurance Terms refers in relevant part to "dwelling coverage" as "[c]overage for property damage to a building *used as a dwelling*." Barron's Dictionary of Insurance Terms 144-45 (Harvey W. Rubin ed., Barron's Educational Series, Inc. 2000) (emphasis added). Finally, Barron's Dictionary of Real Estate Terms supports the dictionaries cited above by defining "dwelling" as "a place of *residence*." Barron's Dictionary of Real Estate Terms 139 (Jack P. Friedman et al. eds., Barron's Educational Series, Inc. 2004) (emphasis added). Thus, where courts may refer to English, legal, and specialized dictionaries to determine the plain meaning of a term such as "dwelling" in interpreting an insurance policy, those resources favor a residential definition, which is not consistent with use of the House exclusively to operate a daycare.

Moreover, Washington courts have attempted to define the scope of language similar to that at issue in this case, though not in an identical context, and have concluded that such language excludes business uses. For example, in Metzner v.

Wojdyla, 125 Wn.2d 445, 447 (1994), property owners in a residential subdivision sought to enjoin a neighbor's use of property in the subdivision as a daycare facility, where a covenant covering the subdivision specified that property shall be used "for residential purposes only." In holding that operation of the daycare violated the covenant, the court noted that the term "residential" was the antonym of "business" and that accepting paying customers was not synonymous with a residential purpose. Id. at 451 (citing Hagemann v. Worth, 56 Wn. App. 85, 91 (1989)). In so holding, the court rejected the daycare operator's argument that the court was required to inquire into whether operation of the daycare was the primary or incidental use of the property. Id. at 452. Rather, the court looked at what it characterized as the "clear" distinction between business and residential use and held that operation of a for-profit daycare on the property violated the covenant against business use. Id. at 452-53.

In addition, there is Washington statutory language addressing the definition of dwelling. For example, under Washington's Landlord-Tenant Act, a "dwelling unit" is defined in relevant part as a "structure . . . which is *used as a home, residence, or sleeping place* by one person or by two or more persons maintaining a common Household, including but not limited to single family residences." RCW 59.18.030(4) (2008) (emphasis added).

Finally, there is also persuasive authority interpreting policy language identical to that at issue here to preclude use of a house as a business. In Crawford v. Gov't Employees Ins. Co., 771 F.Supp. 1230, 1231 (S.D. Ga. 1991), an insured sued his

insurer after being denied coverage for fire damage sustained to a property being used as a rental. The insurer denied coverage based on its contention that use as a rental was not covered, where the policy restricted coverage to "the dwelling . . . used principally for dwelling purposes." Id. at 1232. There, the court found that the phrase "used principally for dwelling purposes" meant that the house must be used primarily as a place of abode, and that because plaintiffs had rented the house for *residential* use, there was a genuine issue of material fact defeating the insurer's motion for summary judgment. Id. at 1239 (emphasis added).

There is no ambiguity in the Policy's use of the language "dwelling . . . used principally for dwelling purposes," and Plaintiffs' use of the House solely as a daycare places the House outside of the Policy. The dictionary definitions of dwelling as a place of abode or residence, combined with Washington case law and statutes, as well as persuasive authority interpreting identical language support this conclusion. As in Metzner, Plaintiffs operated a for-profit daycare in the House, which was not synonymous with a residential purpose. 125 Wn.2d at 451 (citing Hagemann v. Worth, 56 Wn. App. 85, 91 (1989)). Moreover, where the court in Metzner declined to even inquire into whether the daycare was a primary or incidental use of the property, here, the *sole* use of the House was as a daycare. Id. at 452. Furthermore, Washington statutes in the landlord-tenant context speak of dwelling units as structures used as homes, residences, or sleeping places, whereas Plaintiffs here make their home in a location other than the House, making the House akin to a commercial

storefront that is opened and closed for business on a daily basis. RCW 59.18.030(4) (2008). Additionally, unlike the plaintiffs in Crawford, who sought coverage for a property being rented for *residential* use, Plaintiffs here were not using the House as a residence, either for themselves or for tenants. 771 F.Supp. at 1239. Consequently, where Plaintiffs do no dispute that they used the House for the sole purpose of operating a daycare and made their residence elsewhere, the House was not used principally for dwelling purposes within the meaning of the Policy and thus was not covered.

### III. Insurance Fair Conduct Act Claim

IFCA, RCW 48.30.015 (2008), was not in force at the time of Plaintiffs' suit and the Act does not cover their claim. IFCA went into effect on December 6, 2007, whereas Plaintiffs commenced this action on August 10, 2007. While a Washington court has yet to rule on whether IFCA applies retroactively, courts in the Western District of Washington have previously found that IFCA cannot be applied retroactively, based on the fact that the law affects substantive rights, imposes a penalty, and is couched in forward-looking language. Aecon Bldgs., Inc. v. Zurich N. Am., No. C07-832MJP, 2008 WL 895978, at *3 (W.D. Wash. 2008); HSS Enters., LLC. V. Amco Ins. Co., No. C06-1485-JPD, 2008 WL 312695, at *3 (W.D. Wash. 2008). Therefore, ASIC's conduct with respect to Plaintiffs does not subject it to liability under IFCA.

## **CONCLUSION**

The Court GRANTS Defendant ASIC's Motion for Summary Judgment, docket No. 22.

IT IS SO ORDERED.

DATED this 23rd day of September, 2008.

/s Thomas S. Zilly
_____
THOMAS S. ZILLY
United States District Judge